JS-6

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| METAL JEANS, INC., a Nevada corporation, | Case No. CV 15-02127 DDP (PJWx) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |
| STATE OF CALIFORNIA; JON RELLES; TODD BARRETT; HOWARD SOMMERS TOWING, INC., a California corporation, | [Dkt. 54, 55] |
| Defendants. | |

Presently before the court are two motions for summary judgment, one filed by Defendants State of California, Jon Relles, and Todd Barrett ("the State Defendants"), and the other by Defendant Howard Sommers Towing, Inc. Having considered the submissions of the parties and heard oral argument, the court grants the motions and adopts the following Order.

**I. Background**[1]

---

[1] The following facts are drawn from the State Defendants' Statement of Uncontroverted Facts and Conclusions of Law and Plaintiff's Disputed Issues of Genuine Issues of Disputed Material Fact in response to the State Defendants' statement. Plaintiff's objections to the Declarations of Jon Relles, Todd Barrett, Heather
(continued...)

On April 11, 2014, Defendant Todd Barrett ("Barrett"), a California Highway Patrol Officer, noticed a tractor-trailer parked on the side of the U.S. 101 freeway. Approximately twenty four hours later, Barrett noticed that the tractor-trailer had not been moved. Barrett knocked on the window of the tractor, but received no response. The trailer bore a California license plate that had been issues to a different trailer of a different make, model, and year. The tractor bore a Canadian license plate. An inquiry to Canadian authorities returned a result that read, in part, "**Response from Canadian System - Stolen Vehicle File**[.]" Below other lines of text, the report read, "**Not on File[.]**" Barrett thought this report might indicate that the tractor had been stolen.

Barrett also located a vehicle Identification Number ("VIN") on the trailer ("the first VIN"). The VIN did not match the license plate displayed on the trailer. Barrett later located another VIN number ("the second VIN") elsewhere, on the frame of the trailer. The first VIN appeared to be an alteration of the second VIN, with a "1" in the latter modified to appear as a "T" in the former. Barrett decided to have the tractor and trailer towed.

CHP Officer Heather Chaldu soon arrived at the scene, followed by a tow truck dispatched by Defendant Howard Sommers Towing, Inc. ("HST"). Before the tow truck impounded the tractor-trailer, Barrett attempted to enter the tractor to confirm that nobody was hiding or incapacitated inside the sleeping area, and to look for evidence that the tractor or trailer had been stolen, or evidence

---

[1](...continued)
Chaldu, and Seth Moffitt are overruled.

that would otherwise explain the tractor-trailer's prolonged presence on the side of the freeway.  Barrett finally gained entry to the tractor cab by breaking the window on the passenger side. The sleeping compartment was empty, although Barrett did find license plates and registration records for several vehicles, including a Canadian license plate that had been issued to the trailer.  The trailer was also empty, except for load lock bars and wheel blocks.  HST then towed the tractor-trailer to an HST yard. Neither Barrett nor Officer Chaldu observed any damage being caused to the truck during the tow.

Defendent Relles, a CHP Officer, was assigned to investigate the tractor-trailer.  On April 15, 2014, Gary Topolewski ("Topolewski") arrived at the CHP office to claim the trailer. Relles' investigation into whether the tractor-trailer had been stolen was not complete, so he declined to release the tractor-trailer to Topolewski at that time.  Relles then contacted Canadian authorities, who preliminarily indicated that the tractor-trailer had not been stolen.

Topolewski told Relles that someone named Matt Cowley had left the tractor-trailer adjacent to the freeway.  Relles was unable to contact Matt Cowley at the phone number Topolewski provided. Plaintiff later acknowledged that Matt Cowley no longer worked for Plaintiff at the time the tractor-trailer was left near the freeway, and that someone named Roger Ogden was responsible for abandoning the tractor-trailer.  Relles went to the HST lot to inspect the tractor-trailer and confirmed that the trailer's first VIN had been gouged, and thus did not match the second VIN.  Relles nevertheless decided to release the tractor-trailer to Topolewski

3

later in the day, and left a message with Topolewski to that effect.

Plaintiff's Complaint alleges causes of action under 42 U.S.C. 1983 against for the allegedly unlawful search and seizure of the tractor-trailer. The Complaint also alleges causes of action for negligence and conversion. Defendants now move for summary judgment.

**II. Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a

4

party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir.1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

    A.   Section 1983 Claims

"A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of his 'rights, privileges, or immunities secured by the Constitution and laws' by a person or entity, including a municipality, acting under the color of state law." Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting 42 U.S.C. § 1983). "To state a cause of action under section 1983, [a plaintiff] must show that (1) [the defendant]

acted under color of state law; and (2) [the defendant] deprived [the plaintiff] of rights secured by the Constitution or federal law." Barry v. Fowler, 902 F.2d 770, 772 (9th Cir. 1990).

"The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment." Miranda v. City of Cornelius, 429 F.3d 858, 862 (9th Cir. 2005) (internal quotation omitted). Police may seize a vehicle if they have probable cause to believe the vehicle is evidence of a crime, even if the vehicle is parked in a public place. United States v. Bagley, 772 F.2d 482 at 490-91 (9th Cir. 1985). Police may also conduct a warrantless search of a vehicle if there is probable cause to believe that it contains evidence of a crime, or when they reasonably believe that someone is in need of immediate aid. Maryland v. Dyson, 527 U.S. 465, 467 (1999); Mincey v. Arizona, 437 U.S. 385, 392 (1978); United States v. Rodgers, 656 F.2d 1023, 1028 (9th Cir. 2011); Hopkins v. Bonvicino, 573 F.3d 752, 763-64 (9th Cir. 2009). Additionally, "[i]n their 'community caretaking' function, police officers may impound vehicles that jeopardize public safety and the vehicular movement of vehicular traffic. Whether an impoundment is warranted . . . depends on the location of the vehicle and the police offiers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft." Miranda, 429 F.3d at 864 (internal quotation and citation omitted).

Defendants contend that Barrett reasonably believed that the trailer had been stolen. "[W]here the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts, it is appropriate for [a] court to decide whether probable cause existed

. . . ." Peng v. Mei Chin Penghu, 335 F.3d 970, 979-80 (9th Cir. 2003).

It is undisputed that the tractor-trailer had been left unattended on the side of a freeway for approximately twenty-four hours, that the trailer displayed a license plate that had been issued to a different trailer of a different make, model, and year, and that the trailer bore two different VINs.[2] Although Plaintiff argues that Barrett "misread" the first VIN and later stated that he entered the "wrong VIN number" when conducting a license plate check, that assertion is not supported by the record. (Opposition at 6:4; Plaintiff's Disputed Issues of Genuine Issues of Disputed Material Fact ("PDIF") 9.) Contrary to Plaintiff's representation, Barrett's report did not state that he entered a "wrong" VIN. Rather, the report states that the trailer bore two different VINs, the first of which returned a "no record" result. (Declaration of Mark Overland, Ex. 3.) Indeed, Plaintiff does not dispute that the first VIN was gouged and altered. (PDIF 50, 56.) Nor does Plaintiff dispute that Barrett was taught that thieves sometimes put the wrong license plate on a vehicle or alter a vehicle's VIN so the vehicle will not return a stolen vehicle report. (PDIF 11.)

---

[2] Plaintiff disputes Defendants' characterization that the tractor-trailer was abandoned on the dirt "shoulder" of the freeway. Photographs taken by HST's driver indicate that the tractor-trailer was adjacent to the freeway, approximately 3 or 4 car widths from the nearest lane of traffic. Plaintiff also disputes that the tractor-trailer was left directly in front of an "Emergency Parking Only" sign. Both Barrett and Officer Chadhu stated that the vehicle was parked in such an area. The only evidence to the contrary is Topolewski's testimony that he has never seen an emergency parking sign at that location. Topolewski was never asked whether he had ever looked at that area in particular or would have any reason to take note of any signs in that location. (Overland Decl., Ex. 2 at 44.)

7

Thus, even putting aside Barrett's misreading of the Canadian "Stolen Vehicle File" report, Barrett had probable cause to believe that the trailer had been stolen.[3]

Even if probable cause did not exist to suspect that the trailer had been stolen, other exceptions to the Fourth Amendment justified Barrett's actions. Barrett stated that he entered the tractor cab because he was concerned that someone might be in the sleeping compartment, either unable or unwilling to respond. Although Plaintiff disputes this fact by citation to Officer Chaldu's declaration, that evidence supports rather than contradicts Barrett's statement. (Chaldu Decl. ¶ 5-6.) Barrett's actions therefore fall under the emergency and exigency exceptions.[4] See Hopkins, 573 F.3d at 763.

Lastly, Barrett's decision to seize the tractor-trailer was justified under the community caretaking exception to the Fourth Amendment. Although violation of state vehicle codes would not in and of itself implicate the community caretaking doctrine, related factors, including whether a vehicle is impeding traffic, threatening public safety, or vulnerable to vandalism and theft are relevant to whether impoundment is warranted. See United States v.

---

[3] That probable cause was sufficient to justify the search and seizure of both the trailer and the tractor. Even though the tractor was displaying the proper license plate and did not have an altered VIN, it could have been involved in the potential theft of the trailer, and indeed contained license plates and registrations for several different vehicles. The tractor was therefore subject to seizure as evidence of a potential crime. Bagley, 772 F.2d at 490-91.

[4] Barrett's actions fall under these exceptions even assuming that the standards applicable to a home applies to the tractor's sleeping area. See Hopkins, 573 F.3d at 763; Dyson, 1999 U.S. at 466-67.

8

Cervantes, 703 F.3d 1135, 1141-42 (9th Cir. 2012); Miranda, 429 F.3d at 864. Here, there is no dispute that the tractor-trailer was abandoned on the side of a freeway. Although the tractor-trailer was not immediately adjacent to traffic lanes, it was in the vicinity of moving traffic. Furthermore, both Barrett and Officer Chaldu stated that the tractor-trailer was left in an emergency parking area, and Barrett stated that it was blocking an emergency parking sign. (See n. 1, supra). As such, the tractor-trailer was impeding other motorists' use of the area both by physically occupying the space and by blocking signage advising motorists of the area's intended use. Lastly, having apparently been abandoned, the tractor-trailer was a tempting target for thieves or vandals.

Plaintiff appears to suggest that the community caretaking rationale nevertheless does not apply because Barrett could have contacted Plaintiff, "whose identity was visible on the tractor." (Opp. at 8.) Although photographs do reveal that the tractor-trailer did bear a "Metal Jeans" name, logo, and website, the pictures do not show any phone number or any other contact information, other than the general website address. (HST Appendix, Ex. 1.) Further, the fact that Barrett might have been able to track Plaintiff down has no bearing on whether the tractor-trailer posed a hazard to community safety at the time it was seized. For these reasons, Barrett's search and seizure of the tractor-trailer did not violate the Fourth Amendment.

Defendants also argue that Plaintiff's Fourth Amendment claims against Relles fail because Relles, who investigated the tractor-trailer after it had been towed to HST's yard, did not seize

9

anything. Plaintiff does not respond to this argument. To the extent Plaintiff's claim against Relles is based upon his search of the tractor-trailer inside HST's yard, the claim has no merit. Relles had probable cause to investigate the tractor-trailer as evidence of a crime for the same reasons that Barrett had probable cause to search and seize the tractor-trailer in the first instance.[5] Further, the Supreme Court has long held that police may reasonably search vehicles that have already been lawfully impounded. See South Dakota v. Opperman, 428 U.S. 364, 371-74 (1976). Plaintiff's opposition makes no mention of the Fourth Amendment claims against Relles, and therefore cites no evidence to support the baseless claims.

In summary, there is no evidence in the record to support Plaintiff's Fourth Amendment claims. To the contrary, the undisputed evidence establishes that Barrett's search and seizure of Plaintiff's tractor-trailer, as well as Relles' subsequent follow-up search, were permissible under several exceptions to the Fourth Amendment's warrant requirement. Because Plaintiff's Fourth Amendment claims fail, the court need not address HST's argument that it is entitled to summary judgment because it was not acting under color of law, nor the State Defendants' arguments that Barrett and Relles are entitled to qualified immunity.

Defendants' motion for summary judgment on Plaintiff's constitutional claims is granted.

---

[5] Plaintiff does not dispute that even though Topolewski claimed he had not filed a stolen vehicle report, Relles believed Topolewski or someoneone else at Topolewski's company might have filed a false report as part of an insurance fraud scheme. (PDIF 44.) Relles also stated that he believed a third party might have disputed Topolewski's ownership. (Declaration of Jon Relles ¶ 6.)

10

B.  Conversion

Under California law, a conversion claim requires (1) ownership or right to possession of property, (2) wrongful disposition of that property, and (3) damages. G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Serv., Inc., 958 F.2d 896, 906 (9th Cir. 1992). "In order to establish a conversion the plaintiff must show an intention or purpose to convert the goods and to exercise ownership over them, or to prevent the owner from taking poesssion of his property.  Thus, a necessary element of the tort is an intent to exercise ownership over property which belongs to another." Collin v. Am. Empire Ins. Co., 21 Cal. App. 4th 787, 405 (1994).

Plaintiff's theory of its conversion claim is unclear. Plaintiff argues that "the crux of Plaintiff's claim for conversion is Defendant's (sic) wrongful interference with Plaintiff's property interests in the Truck and resulting damage." (Opp. at 9:9-10.)  Some of the evidence to which Plaintiff cites, however, pertains to the presence or absence of a refrigerator and television inside the tractor. (PDIF 33-35.)  The exhibit to which Plaintiff cites does not mention any such property.  (Overland Decl., Ex. 2.)  Although Topolewski did testify that he saw a television in the tractor "at some point," he had "no idea" when he last saw either the television or the tractor prior to recovering the latter from the HST yard.  (Declaration of Benjamin Barnouw, Ex. 6 at 122-23.)  Barrett, Officer Chaldu, and the tow truck driver all stated that they did not see a television or refrigerator inside the tractor.  No reasonable trier of fact could find that any Defendant converted any such property.

11

Nor could any reasonable trier of fact conclude that any Defendant converted the tractor-trailer. There is no evidence that any Defendant sought to exercise ownership over the tractor trailer. Collin, 21 Cal. App. 4th at 805. Nor is there any evidence that any Defendant "wrongfully" disposed of the tractor trailer. Plaintiff's argument that the impound of the trailer was impermissible under the California Vehicle Code is simply incorrect. (Opp. at 7.) The California Vehicle Code allows a peace officer to remove a vehicle that is left upon a freeway right-of-way for more than four hours or displays a license plate that was not issued to that vehicle, or where an officer has probable cause to believe the vehicle is or contains evidence of a crime or reasonably believes the vehicle has been abandoned. Cal. Vehicle Code §§ 22651(f),(o)(1)(b), 22655.5(b), 22699(a). The evidence is undisputed that the tractor-trailer was subject to impoundment under any and all of these provisions.[6]

Plaintiff also argues, briefly, that "[t]he evidence is disputed as to whether defendants intended to and exercised 'a reasonable opportunity to inquire' into Plaintiff's claim of ownership." (Opp. at 9:12-14.) Although not stated as such, Plaintiff's argument appears to be that Relles converted the tractor-trailer by not immediately releasing it to Topolewski until the evening, as opposed to the morning, of April 15. See Giacomelos v. Bank of Am. Nat. Trust & Sav. Assoc., 237 Cal. App. 2d 99, 100 (1965) ("The law does recognize the dilemma of one in possession as a bailee or similar holder upon demand by a third

---

[6] For these same reasons, HST did not act wrongfully in carrying out Barrett's request to impound the tractor-trailer.

12

party for the goods. Such holder does not become a converter by making a qualified refusal to surrender if his real and stated purpose is to secure a reasonable opportunity to inquire into the claimant's right.")

Although Plaintiff contends that there is a dispute as to whether Relles' efforts were reasonable, it is undisputed that Relles spent the day inquiring with Canadian authorities as to the status of the trailer as well as investigating the trailer itself. As discussed above, regardless of the outcome of the Canadian inquiry, Relles had probable cause to suspect that the trailer was stolen, or possibly the subject of an insurance fraud scheme.[7] Further, because the trailer had an altered VIN, Relles had wide discretion to dispose of or release it. Cal. Vehicle Code § 10751. Accordingly, Relles' decision to continue investigating the tractor trailer for, at most, one business day was not unreasonable or wrongful.

For these reasons, the court grants summary judgment to Defendants on Plaintiff's conversion claim.

C.   Negligence

The elements of a negligence claim are: (1) the existence of a duty to exercise due care, (2) breach of that duty, (3) causation, and (4) damages. Merrill v. Navegar, Inc., 26 Cal.4th 465, 500 (2001). Defendants argue that there is no evidence that any Defendant breached a duty to Plaintiff or caused any damages. Plaintiff's responses are not well developed. Plaintiff contends

---

[7] Even if there were evidence of conversion, Defendants argue that Barrett and Relles would be immune from Plaintiff's tort claim under California Government Code §§ 821.6 and 820.2. Plaintiff does not address this argument.

that "the crux of Plaintiff's negligence claim is the failure to use ordinary care in safeguarding Plaintiff's property rights in the Truck and resulting damage." (Opp. at 9:21-22.) There is no evidentiary support for Plaintiff's argument, such as it is. Of the five disputed facts Plaintiff cites, three pertain to the television and refrigerator, discussed above in the context of Plaintiff's conversion claim. (PDIF 33-35.) The other two pertain to whether the truck's bumper was already damaged when the HST tow truck arrived. HST's driver took pictures of the bumper prior to the tow. Barrett stated that damage to the bumper depicted in the photographs was already there when he arrived, and that he did not see any further damage being caused during the tow. (Barrett Decl. ¶¶ 10, 12.)

Plaintiff disputes this evidence with reference to counsel Mark Overland's Declaration and exhibits 4, 5, and 6 thereto. The Overland Declaration, however, simply misstates the evidence. Overland states that Barrett's police report indicates no damage to the tractor's bumper prior to the tow. (Overland Decl. ¶ 5.) However, exhibit 4, to which Overland cites, is <u>not</u> the report pertaining to the tractor, but rather the report pertaining to the trailer. (Overland Decl., Ex. 4.) Exhibit 5, also cited by Overland, is Barrett's report on the tractor. That report clearly describes damage to the right bumper, left rear wheel area, the right window (which Barrett admittedly broke to gain entry to the cab), and elsewhere. (Overland Decl., Ex. 5.) Exhibit 6 consists of excerpts from Topolewski's deposition, wherein Topolewski recounts visiting the HST yard and observing damage to the tractor consistent with Barrett's report.

On this record, no reasonable trier of fact could conclude that the damage to the truck, other than the broken window, was caused by any Defendant.  No trier of fact could find, nor does Plaintiff argue, that Barrett's decision to break the window in the course of entering the tractor's cab to make sure nobody was hiding or incapacitated within was a breach of any duty Barrett owed to Plaintiff.   Accordingly, summary judgment is granted on Plaintiff's negligence claim.

**IV. Conclusion**

For the reasons stated above, Defendants' Motions for Summary Judgment are GRANTED with respect to all claims.


IT IS SO ORDERED.


Dated: October 17, 2016

DEAN D. PREGERSON
United States District Judge